## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**OLGA LAVANDEIRA,**

     **Plaintiff,**

**v.**                           **CASE NO: 8:20-cv-00169-SDM-CPT**

**CITY OF TAMPA,**

     **Defendant.**

_____/

## JOINT PRE-TRIAL STATEMENT

Plaintiff, OLGA LAVANDEIRA and Defendant, CITY OF TAMPA, submit this Joint Pre-Trial Statement, pursuant to Local Rule 3.06(b) and state the following:

### I.    Basis of Federal Jurisdiction -3.06(b)(1)

This court has original jurisdiction over the subject matter of this case pursuant to 42 U.S.C. § 12181-189, Title II of the American with Disabilities Act and 29 U.S.C. § 794 (section 504) of the Rehabilitation Act of 1973. The events giving rise to the claim arose in Hillsborough County, Florida is within the Tampa Division of the Middle District of Florida.

### II.    Concise statement of the action 3.06(b)(2)

This is an action brought by Plaintiff, Olga Lavandeira, who is Deaf, against the City of Tampa for allegedly violating the Americans with Disability Act and the Rehabilitation Act for the failure to provide a sign language interpreter on several

occasions when Plaintiff had contact with the Tampa Police Department in connection with the Department's investigation of the murder of Plaintiff's daughter.

### III.   Concise Statement of each party's position 3.06(b)(3)

**PLAINTIFF:** From October 2017 to November 2017, four people were alleged to have been murdered by Howell Donaldson, the Seminole Heights Serial Murderer. Ms. Lavandeira is the mother of the second murder victim, Monica, only 32 at the time of her death and the only daughter of Ms. Lavandeira. As a result, Plaintiff began substantive interactions with the TPD about her daughter's murder. First, the TPD called a press conference to announce the arrest of Donaldson and admitted to using a "fake interpreter," even though the TPD Public Information Officer knew Plaintiff was deaf and used ASL, which shut Plaintiff out of the announcement. Prior to her daughter's funeral, Plaintiff went to the TPD to retrieve Monica's belongings, and to ask other questions about her daughter's murder, a request for an interpreter was made and denied. The TPD instead used an unqualified family member to "fingerspell" for Plaintiff. After Donaldson's first appearance in court the family members met with Lead Detective Austin Hill to learn more about the investigation, and a request for a qualified interpreter was made, and was denied. The TPD instead used an unqualified family member to "sign" for Plaintiff, while this same person attempts to interpret in Spanish for Plaintiff's parents. TPD then invited Plaintiff and her family to a press conference at the TPD, and a request was made for an interpreter, which was again denied. The TPD instead used an unqualified family member to "sign" for Plaintiff while this same person attempts to interpret in Spanish for Plaintiff's parents. TPD

used an estranged hearing family member as the main contact to share updates instead of talking to Plaintiff directly. TPD is required to give primary consideration to the request for an interpreter by Plaintiff, and consistently deprived her of her rights, and Plaintiff has been harmed by this discrimination.

**DEFENDANT:** The first occasion where Plaintiff had contact with the City, was to pick up her daughter's effects at the Tampa Police Department Headquarters. The City of Tampa contends that a sign language interpreter was not necessary because the encounter was short, not complicated, and the applicable laws do not require communication aids for every encounter. Plaintiff successfully received the property that could be released and thus was not excluded from, or denied, the ability to obtain her daughter's personal effects.

The City of Tampa contends that Plaintiff was not present for, or expected to be present for, an impromptu press conference about the arrest of the suspect and therefore the City of Tampa could not have discriminated against Plaintiff personally. Plaintiff was driving from Georgia when the press conference occurred and did not watch it as it occurred live. The press conference was for local media outlets. The City of Tampa contends that the law does not require a sign language interpreter for every press conference. Further, the City of Tampa contends that Plaintiff had already been informed by her family that the suspect had been arrested prior to the press conference that occurred hours after the arrest was made.

The City of Tampa contends that the third event alleged in the Complaint was a family meeting that the Detective was asked to have within hours of the request and

the Detective was not aware that Plaintiff was attending the meeting nor was he aware that he needed to obtain a sign language interpreter for Plaintiff. Plaintiff did not make the arrangements with the Detective and does not have personal knowledge about the conversation between her ex-husband and the Detective.  The City contends that even if the ex-husband had made the request, Detective Hill need supervisory approval due to the involved cost expenditure before he could request services from the vendor that the City contracted with for sign language services.

The fourth event was a reward ceremony for the person who called the police and gave information that led to the murder suspect's arrest. The City of Tampa contends that the Plaintiff cannot say who invited her family to the ceremony and therefore there is no evidence that would demonstrate that the person who extended the invitation was aware that Plaintiff was deaf and needed a sign language interpreter. In sum, Plaintiff's evidence does not demonstrate that the City of Tampa acted intentionally or with deliberate indifference.

## IV.   Exhibits or Exhibit Substitutes- 3.06(b)(4)

### Plaintiff's Exhibits

| No. | Nature of Exhibit | Objection |
|-----|-------------------|-----------|
| 1 | Email message between Olga Lavandeira and Detective Hill - COT-RRFP-000001 | |
| 2 | SOP 302.1 Persons who are Deaf or Hard of Hearing - COT-RRFP-000160-162 | |
| 3 | The City of Tampa's ADA Posters. COT-RRFP-000170-171 | |
| 4 | AQI Services, LLC's Contract COT-RRFP-000172-000396, 000461-507 | |

| 5 | Purple Communications, Inc. Contract. COT-RRFP-000397-460, 000596-651 | |
|---|---|---|
| 6 | Indy Interpreting, Inc. BDB CCI Group. COT-RRFP-000508-595 | |
| 7 | Treatment Notes of Dr. Nancy Russell. Lavandeira 011400-11413 | |
| 8 | General Offense Hardcopy of deaf person saying they have information and need an interpreter. Lavandeira 000619-627. | Objection, relevance and hearsay |
| 9 | January 24, 2019, Text between Yurian Gutierrez and Olga Lavandeira about no interpreter on Tuesday - Olga Lavandeira is not attending. Lavandeira 200020 | Objection, relevance |
| 10 | Email from Kenny Hoffa to Detective Hill about Monica's pictures from her phone. Lavandeira 200021. | Objection, hearsay and relevance |
| 11 | Text messages from Kenny Hoffa to Olga Lavandeira regarding after Court he saw the Chief of Police and he was sorry about the fake interpreter. Lavandeira 200022 | Objection, hearsay |
| 12 | Monica's death certificate. Lavandeira 200023 | Objection, relevance. Parties stipulated to her age, date of death and how she died |
| 13 | Business card of Detective Austin Hill. Lavandeira 200024 | |
| 14 | October 13, 2017, Text messages between Gabriella Gutierrez and Yurian Gutierrez about finding out Monica is dead. Lavandeira 200027-28 | Objection, hearsay |
| 15 | Text message from Isabel Rosales and Yurian Gutierrez about Donaldson seeking outside doctor to visit him because he is ailing. Lavandeira 200029 | Objection, hearsay and relevance |
| 16 | Text messages between Olga Lavandeira and Yurian Gutierrez talking about Kenny Hoffa and the death penalty. Lavandeira 200063-76 | Objection, hearsay and relevance |
| 17 | Text message from Yurian Gutierrez and Olga Lavandeira on June 25, 2018, about award ceremony. Lavandeira 200077-78 | Objection, hearsay and relevance |

| 18 | Text messages from Yurian Gutierrez and Olga Lavandeira about Donaldon's parent's appearance for Court. Lavandeira 200079-81. | Objection, hearsay and relevance |
| 19 | February 24, 2018, text messages from Yurian Gutierrez and Olga Lavandeira about family not invited but Olga Lavandeira saw Maria there. Lavandeira 200082-83. | Objection, relevance and hearsay |
| 20 | Text from Olga Lavandeira to Yurian Gutierrez re: Donaldson's psychiatric evaluation. Lavandeira 200085-89 | Objection, relevance and hearsay |
| 21 | Text message from Yurian Gutierrez and Olga Lavandeira about Kenny Hoffa - Olga Lavandeira is confused. Lavandeira 200090-92 | Objection, relevance and hearsay |
| 22 | Text saying Mr. Hoffa sorry about the publication of the photos of Monica's clothes. Lavandeira 200094-95. | Objection, hearsay |
| 23 | Text from Olga Lavandeira to Yurian Gutierrez re: Monica's Memorial and news talking about Monica. Lavandeira 200097 | Objection, hearsay |
| 24 | January 24, 2019, Text from Olga Lavandeira to Yurian Gutierrez re: no interpreter for Court. Lavandeira 200098 | Objection, relevance and hearsay |
| 25 | February 22, 2019, Text from Olga Lavandeira to Yurian Gutierrez re: interpreter for court. Lavandeira 200099 | Objection, relevance and hearsay |
| 26 | Text from Olga Lavandeira to Yurian Gutierrez re: State Attorney's having a family meeting on July 3,2019 and will have an interpreter. Lavandeira 200100-101. | Objection, relevance and hearsay |
| 27 | Detective Notes Lavandeira 200112-200113 | Objection, relevance and hearsay |
| 28 | Text between Kenny Hoffa and Olga Lavandeira about break in case. Lavandeira 200114-121 | Objection, hearsay |
| 29 | Olga Lavandeira asking Kenny Hoffa to ride with him to Court and tell her what | Objection, hearsay and relevance |

| | | |
|---|---|---|
| | happened after Court. Lavandeira 200126-131 | |
| 30 | Detective Austin Hill did not give her CD of Monica's photos. Lavandeira 200132 and 200135- 2000139 | Objection, hearsay |
| 31 | Kenny Hoffa telling Olga Lavandeira that the Chief was sorry about fake interpreter. Lavandeira 200140-141 | Objection, hearsay and relevance |
| 32 | Text between Kenny Hoffa and Olga Lavandeira about death penalty. Lavandeira 200142-148 | Objection, hearsay and relevance |
| 33 | Text between Kenny Hoffa and Olga Lavandeira about Motion for Competent. Lavandeira 200149-150 | Objection, hearsay and relevance |
| 34 | Kenny Hoffa explains what competent to stand trial means. Lavandeira 200151 | Objection, hearsay and relevance |
| 35 | Olga Lavandeira asking if Kenny Hoffa asked for interpreter – he said yes. Lavandeira 200154-155, Lavandeira 200158 | Objection, hearsay |
| 36 | Text messages between Olga Lavandeira and Gabriella Gutierrez saying they announced they caught Donaldson but no captions on FaceBook. Lavandeira 200159-170 | Objection, hearsay |
| 37 | Text messages between Olga Lavandeira and Gabriella Gutierrez about fake interpreter. Lavandeira 200171. | Objection, hearsay and relevance |
| 38 | Text between Olga Lavandeira and Alex Abenchuchan. Lavandeira 200176-80 (Olga Lavandeira is blamed for fake interpreter from the community) | Objection, relevance and hearsay |
| 39 | Text between Olga Lavandeira and Kenny Hoffa confirming he knew Olga Lavandeira was confused. Lavandeira 200181-183. | Objections, hearsay |
| 40 | Monica's Property Disposition Form. Lavandeira 000763 | |
| 41 | November 17, 2020, Linguistic Consulting Service Expert Report (Plaintiff's Expert Report) | |
| 42 | Olga Lavandeira Deposition Transcript | |

| 43 | Yurian Gutierrez Deposition Transcript | |
| 44 | TPD Corporate Rep, Raquel Pancho, Deposition Transcript | |
| 45 | Detective Austin Hill Deposition Transcript | |
| 46 | Steve Hegarty Deposition Transcript | |
| 47 | Defendant's Responses to Interrogatories | |
| 48 | Defendant's Responses to Request to Admit | |
| 49 | Plaintiff's Corporate Representative Deposition Notice | |

**Defendant**

| No. | Nature of Exhibit | Objection |
|---|---|---|
| 1 | Signed property form | |
| 2 | Standard Operating Procedure 302.1 | Hearsay |
| 3 | Contracts with Purple | Relevance |

## V.    List of Witnesses – 3.06 (b)(5)

**Plaintiff**

| Witness Name | Objections | Will/May call |
|---|---|---|
| Olga Lavandeira | | Will Call |
| Yurian Gutierrez | | Will Call |
| Shelina Reneau | | Will Call |
| Carlos Gutierrez | | Will Call |
| Myrtis McLaughlin | Objection relevancy and duplication | May Call |
| Ivette Corvo | | May Call |
| Gabriella Gutierrez | Objection, not previously listed on Plaintiff's disclosures and hearsay | Will Call |
| Dr. Judy Shepard-Kegl | | Will Call |
| Anne Marie Baer | Objection, duplicative of testimony from Dr. Shepard-Kegl | May Call |
| Rosa Rodriguez | Objection, duplicative testimony | May Call |

| | | |
|---|---|---|
| Rachel Pancho, City of Tampa ADA Coordinator | | May Call |
| Elizabeth (Betti) Bonnie | Objection relevancy and duplication | May Call |
| Steve Hegarty | | May Call |
| Any witness listed by Defendant | | |
| Impeachment witnesses | | |

**Defendant**

| Witness Name | Objections | Will/May call |
|---|---|---|
| Detective Austin Hill | | Will call |
| Bobby Hoffa | Relevance | May Call |
| Ken Hoffa | | Will Call |
| Stephen Hegarty | | Will Call |
| Rachel Pancho | | May Call |

## VI.   List of Expert Witnesses 3.06(b)(6)

### PLAINTIFF

| Expert Witness Name | Objections | Substance of testimony |
|---|---|---|
| Dr. Judy Shephard-Kegl | | Communication ability of the Plaintiff in spoken or written English, ASL, Spanish sign language, reading comprehension, and speechreading. Cultural and Linguistic considerations of the interactions between Plaintiff and the TPD as outlined in expert's report, and other barriers to effective bi-directional communication presented by the content of the material exposed to by Plaintiff. Interpreting |

| | | abilities of Yurian Gutierrez. |
|---|---|---|
| Anne Marie Baer | Objection, duplicative of information in Shepard reports and the City stipulates that Yurian Gutierrez is not ASL certified. | Interpreting abilities of Yurian Gutierrez. |

**DEFENDANT** —None.

## VII.   Money Damages 3.06(b)(7)

| Type | | Amount |
|---|---|---|
| Emotional Distress damages, Compensatory damages, Exemplary damages, Expectation damages, Nominal damages, Dignitary damages, and stigmatic damages. | Objection, re Exemplary, Expectation, dignitary and stigmatic damages | To be determined by the Jury |

## VIII.  Depositions to be Offered as Evidence in lieu of live testimony 3.06(b)(8)

**PLAINTIFF** — Detective Austin Hill if the Motion for Continuance is not granted.

**DEFENDANT** — Detective Austin Hill if the Motion for Continuance is not granted.

## VII.   Concise Statement of Admitted Facts 3.06(b)(9)

1.  The Tampa Police Department is a Title II entity as defined by the Americans with Disabilities Act.

2.  The Tampa Police Department receives federal funding and is a covered entity under Section 504 of the Rehabilitation Act of 1973.

3. Plaintiff is the mother of Monica Hoffa.

4. Plaintiff is deaf and uses ASL to communicate effectively, she cannot speak clearly, and cannot lipread. She reads at an approximate third grade level.

5. Plaintiff qualifies as a person with a disability as defined by the ADA and Section 504.

6. Ken Hoffa is the biological father of Monica Hoffa.

7. Yurian Gutierrez is Plaintiff's niece, she speaks Spanish and English but is not a qualified ASL interpreter as defined by the ADA.

8. Monica Hoffa was murdered on October 11, 2017, in Tampa, Florida.

9. Tampa Police Department investigated Monica's death.

10. Austin Hill was a Lead Detective assigned to investigate Monica's death.

11. Before meeting Ms. Lavandeira in person Detective Hill was told Plaintiff was deaf and used ASL to communicate.

12. Prior to Monica's funeral Plaintiff's niece, called Detective Hill for Plaintiff to obtain Monica's personal effects.

13. Plaintiff visited the Tampa Police Department to pick up her daughter's effect on October 20, 2017.

14. Plaintiff was accompanied by her niece to pick up her daughter's effects.

15. Ivette Corvo is Plaintiff's niece, but she is not a qualified ASL interpreter as defined by the ADA.

16. Plaintiff obtained only some of her daughter's effect on the date of her visit.

17. On November 28, 2017, Howard Donaldson III was arrested.

11

18. Howard Donaldson III is being prosecuted by the State Attorney's Office for Monica's death.

19. On November 30, 2017, the first appearance for Howell Donaldson was held at the Thirteenth Judicial Circuit Courthouse.

20. On November 30, 2017, after the first appearance Ken Hoffa called Detective Hill and asked for a meeting to discuss the case with the family.

21. The meeting was scheduled to begin approximately two to three hours after the call was made.

22. The family meeting with Detective Hill occurred on November 30, 2017, at the Tampa Police Department.

23. There were at least five people at the meeting.

24. Plaintiff was present for the meeting with Detective Hill on November 30, 2017.

25. The family was invited to a press Conference to be held on December 1, 2017, at the TPD to provide a reward for the citizen who called the Tampa Police Department reporting Howell Donaldson.

26. The press conference and the social time prior to the press conference ran approximately two hours.

27. Plaintiff, her parents Ana and Guillermo, Yurian Gutierrez, and Carlos Gutierrez attended the press conference.

28. The Tampa Police Department has a Standard Operating Procedure ("SOP") entitled "Persons Who are Deaf or Hard of hearing" which is s directive "to

establish guidelines to ensure effective communications with individuals who are deaf…"

29. The City of Tampa had a contract with a vendor to provide interpreting services.

## IX.   Concise Statement of each agreed principle of law 3.06 (b)(10)

The Americans with Disabilities Act, 42 U.S.C. §§ 12141 *et seq.*, and its implementing regulations apply to this case.

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and its implementing regulations apply to this case.

The Federal Rules of Civil Procedure and Rules of Evidence apply to this case.

## X.   Concise statement of each issue of fact 3.06(b)(11)

**As Identified by Plaintiff from the pleadings before the Court.**

1. Did The Tampa Police Department violate Title II of the Americans with Disabilities Act?

2. Did The Tampa Police Department violate Section 504 of the Rehabilitation Act of 1973?

3. Did the Plaintiff or anyone on her behalf make a request for a qualified sign language interpreter, or was the need for the interpreter obvious obviating the need to make such a request?

4. If a violation is found under Title II of the ADA is Plaintiff entitled to monetary damages?

5. If a violation is found under Section 504, was the discrimination intentional?

6. If a violation is found under Section 504, is the Plaintiff entitled to monetary damages?

**As Identified by Defendant from the pleadings before the Court.**

1. Whether Ken Hoffa told Detective Hill that Plaintiff would be present for the family meetings.

2. Whether Ken Hoffa asked the Detective to provide a sign language interpreter for Plaintiff for the family meeting.

3. Whether Plaintiff touched the Detective during the family meeting to express

4. Whether Yurian Gutierrez told the Detective during the meeting that Plaintiff did not understand what he was saying and that she did not understand.

5. Whether Detective Hill had the authority to unilaterally request a sign language interpreter.

6. Who invited Plaintiff and her family to participate in the reward presentation at TPD?

7. Whether the person who invited the family to attend the reward presentation was aware that Plaintiff was hearing impaired and required assistance.

8. Whether knowledge by a few people at the Police Department that Plaintiff was deaf was enough to impute knowledge to the entire Police Department or the City as a whole?

9. Whether Detective Hill was required to obtain supervisory approval before ordering a sign language interpreter?

14

10. Whether Detective Hill was an "official" within the meaning of the RA/ADA to demonstrate deliberate indifference?

11. Whether the City of Tampa had knowledge before the press conference that the interpreter who appeared for the press conference was not a certified sign language interpreter?

## XI.   Concise statement of each issue of law 3.06(b)(12)

If a violation is found under the ADA, whether Plaintiff is entitled to injunctive and/or declaratory relief.

If a violation is found under Section 504, whether Plaintiff is entitled to injunctive and/or declaratory relief.

## XII.   List of Pending Motions 3.06(b)(13)

- City's Motion to Continue Trial (Dkt. 128)
- Plaintiff's Response in Opposition (Dkt. 129)

## XIII.   Statement of the Usefulness of Settlement Discussion 3.06 (b)(14)

The parties believe any attempt to settle the case prior to trial would be futile.

## XIV.   Signatures 3.06(b)(15)

In preparing this final pretrial statement, I have aimed for the just, speedy, and inexpensive resolution of this action.

| MORGAN & MORGAN | CITY OF TAMPA |
|---|---|
| /s/ Sharon Caserta | /s/ Ursula D. Richardson |
| Sharon Caserta, Esquire | Ursula D. Richardson |
| Florida Bar Number: 0023117 | Chief Assistant City Attorney |
| Morgan and Morgan | FBN: 0064467 |
| Deaf/Disability Rights Unit | 315 E. Kennedy Boulevard, 5th Floor |

| | |
|---|---|
| 501 Riverside Avenue, Suite 1200<br>Jacksonville, FL 32202<br>Telephone: 904-361-0078<br>Facsimile: 904-361-4305<br>scaserta@forthepeople.com<br>*Counsel for Plaintiff* | Tampa, FL 33602<br>Telephone: 813-274-7205<br>Facsimile: 813-274-8809<br>Ursula.Richardson@tampagov.net<br>*Attorney for City* |

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing document was electronically filed on this 7th day of December 2022 by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Sharon Caserta*
Sharon Caserta

16